# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JONATHAN DIENER and RONNIE DIENER,

        Plaintiffs,

vs.                                  No. CIV 15-0566 JB/LAM

TRAPEZE ASSET MANAGEMENT, INC.,
MIKE VINOKUR, RANDALL ABRAMSON,
and HERB ABRAMSON,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed July 8, 2015 (Doc. 5)("MTD"). The primary issue is whether the Court has personal jurisdiction over Defendants Trapeze Asset Management, Inc., Mikhail Vinokur,[1] Randall Abramson, and Herb Abramson ("the Defendants"), none of whom live in New Mexico. The Court does not have general personal jurisdiction over any of the Defendants, because Plaintiffs Jonathan Diener and Ronnie Diener have not established that the Defendants' contacts with New Mexico are so continuous and systematic that they are essentially at home in New Mexico. The Court also does not have specific personal jurisdiction over the Defendants, because they do not have sufficient minimum contacts with New Mexico to comport with the federal Due Process Clause's requirements. Accordingly, the Court will grant the MTD and dismiss the case without prejudice.

---

[1]The Defendants indicate that Mikhail Vinokur is incorrectly listed as Mike Vinokur. <u>See</u> MTD at 1. Where the Court refers to Mikhail Vinokur in this Memorandum Opinion and Order, it will refer to him as V. Vinokur, and where necessary, Mikhail Vinokur.

## FACTUAL BACKGROUND

The plaintiff need make only a prima facie showing of personal jurisdiction to defeat a motion to dismiss under rule 12(b)(2) of the Federal Rules of Civil Procedure.  See OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1090 (10th Cir. 1998).  "A plaintiff may make this *prima facie* showing by demonstrating, by affidavit or other written materials, facts, that, if true, would support the exercise of personal jurisdiction over defendant."  Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC, 186 F. Supp. 2d 1158, 1160 (D. Kan. 2002).  In considering whether plaintiff has made a prima facie showing of personal jurisdiction over defendant, the Court must take the complaint's allegations as true to the extent the defendant's affidavits do not controvert them.  See Tompkins v. Executive Comm. of S. Baptist Convention, No. CIV 13-0840 JB/CG, 2015 WL 1569034, at *4 (D.N.M. Mar. 31, 2015)(Browning, J.).  Moreover, "[w]hen conflicting affidavits are presented, factual disputes are resolved in plaintiff's favor. . . ."  Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.3d 731, 733 (10th Cir. 1984).  To decide the MTD, the Court takes its facts from: (i) the Complaint for Damages, filed July 1, 2015 (Doc. 1-2)("Complaint"); (ii) the Affidavit of Randall Abramson (dated June 25, 2015), filed July 8, 2015 (Doc. 5-1)("R. Abramson Aff."); (iii) the Affidavit of Herbert Abramson (dated June 25, 2015), filed July 8, 2015 (Doc. 5-2)("H. Abramson Aff."); (iv) the Affidavit of Mikhail Vinokur (dated June 25, 2015), filed July 8, 2015 (Doc. 5-3)("Vinokur Aff."); and (v) the Affidavit in Support of Response to Defendants' Motion to Dismiss (dated July 22, 2015), filed July 22, 2015 (Doc. 11-1)("J. Diener Aff.").

This case is about an investment agreement pursuant to which the Dieners invested money with Trapeze Asset Management, Inc. ("Trapeze Management") and their portfolio ultimately did not perform well.  See Complaint ¶¶ 6, 7, 11, at 2-3.  Trapeze Management is in

the business of investing customers' money for them, and can be characterized as a "portfolio manager, wealth manager, investment advisor equity fund[,] . . . hedge fund," Complaint ¶ 2, at 1, or "portfolio management firm," R. Abramson Aff. ¶ 22, at 4. Trapeze Management is a foreign corporation organized under the laws of the Province of Ontario, Canada, with its principal place of business in Toronto, Canada. See Complaint ¶ 2, at 1; R. Abramson Aff. ¶ 2, at 1. R. Abramson and H. Abramson are or were Trapeze Management's principals, and they are or were the majority shareholders of, officers, of, and on the board of directors of Trapeze Management. See Complaint ¶ 4, at 1-2. R. Abramson and H. Abramson set Trapeze Management's policies on how to invest customers' money, what companies' stocks or other instruments should be purchased and in what quantities, and how Trapeze Management interacts with and represents itself to customers. See Complaint ¶ 4, at 2. Vinokur is a portfolio manager that Trapeze Management currently employs, who was involved in some Trapeze Management investment decisions. See Complaint ¶ 5, at 2.

Trapeze Management has registered as an investment adviser with the United States Securities and Exchange Commission ("SEC"), and it is registered in six states, although it has notice filed[2] as an investment adviser in only four states: Texas, Florida, New York, and California. See Complaint ¶ 3, at 1; R. Abramson Aff. ¶ 7, at 3. Trapeze Management has never been registered to do business in the State of New Mexico, and it does not, and has never, notice filed as an investment adviser in New Mexico. See Complaint ¶ 3, at 1; R. Abramson Aff. ¶ 7,

---

[2]Some states require, for notice purposes, that SEC registered advisers file with the State any document that the investment adviser files with the SEC. See R. Abramson Aff. ¶ 6, at 2. An investment adviser registered with the SEC thus may be required to provide to certain State securities regulators a copy of the Form ADV -- the uniform form used by advisers to register with the SEC -- and any accompanying amendments that the investment adviser filed with the SEC. See R. Abramson Aff. ¶ 6, at 2. "These State filings are called notice filings and are generally required if the SEC registered adviser has investment advisor representatives, physical offices or greater than five clients in the State." R. Abramson Aff. ¶ 6, at 2.

at 3.  From and before 2007 to the present, Trapeze Management has not had a registered agent in New Mexico.  <u>See</u> R. Abramson Aff. ¶ 8, at 3.  Trapeze Management has not advertised or solicited customers in New Mexico, and it does not have any offices, facilities, or employees in New Mexico.  <u>See</u> R. Abramson Aff. ¶¶ 10, 14, 15, at 3.  Trapeze Management also does not own property in New Mexico, and it is not listed in any New Mexico telephone directories.  <u>See</u> R. Abramson Aff. ¶¶ 16-17, at 4.  Trapeze Management operates a passive website, however, which provides information, but does not offer the opportunity to invest or interact on the site. <u>See</u> R. Abramson Aff. ¶ 15, at 4.  Further, Trapeze Management supplies data to Money Manager Review, a web company that maintains an online database of investment performance. <u>See</u> Complaint at 1R. Abramson Aff. ¶ 16, at 4.  Trapeze Management did not pay to have its information reported to Money Manager Review.[3]  <u>See</u> R. Abramson Aff. ¶ 17, at 4.

In early 2007, J. Diener inherited a substantial amount of money, which he sought to invest.  <u>See</u> Complaint ¶ 6, at 2.  The Dieners thereafter purchased a service from Money Manager Review that tracked performance and risk factors involved in several hundred mutual and other funds which specialized in investing customer funds.  <u>See</u> Complaint ¶ 6, at 2.  The Dieners then contacted Trapeze Management after seeing them listed on Money Manager Review.  <u>See</u> Complaint ¶¶ 6-7, at 2.  The Dieners made the initial contact with Trapeze Management.  <u>See</u> Complaint ¶¶ 6-7, at 2.  After receiving marketing materials and having several conversations by telephone with Trapeze Management, the Dieners decided to invest $500,000.00.  <u>See</u> Complaint ¶ 7, at 2.  In several of those conversations before investing, Vinokur represented to the Dieners that Trapeze Management was a safe investment, was well-

---

[3]The Dieners conceded this fact at the November 30, 2015, hearing on the MTD.

diversified, and had an investment program that emphasized steady long-term growth as opposed to immediate or short-term gains.  See Complaint ¶ 8, at 2-3.

When the Dieners became Trapeze Management's clients, an account comprising the Dieners' cash and securities was opened on their behalf at Trapeze Management's affiliated investment dealer firm, Trapeze Capital Corp.  See R. Abramson Aff. ¶ 22, at 4.  Trapeze Capital is organized and exists under the laws of the Province of Ontario, with its offices located in Toronto.  See R. Abramson Aff. ¶ 23, at 4-5.  "Trapeze Capital Corp. is a Member of the Investment Industry Regulatory Organization of Canada and does not do business in the United States."  R. Abramson Aff. ¶ 22, at 5.  The Dieners' account was in custody in Canada at all times.  See R. Abramson Aff. ¶ 24, at 5.  After November 2010, Trapeze Capital's carrying broker, Fidelity Clearing Canada ULC, with its offices located in Toronto, had custody of the Dieners' account.  See R. Abramson Aff. ¶ 24, at 5.  Before November 2010, the Dieners' account was in the custody of a then-carrying broker for Trapeze Capital, TD Waterhouse Canada Inc., with its offices located in Toronto.  See R. Abramson Aff. ¶ 24, at 5.  "Both Fidelity Clearing Canada ULC and TD Waterhouse Canada Inc. provide clearing, custody, and back-office support services to Canadian-based brokerage firms."  R. Abramson Aff. ¶ 24, at 5.

The investment portfolio that Trapeze Management created for the Dieners lost significant value beginning shortly after their investment, and for the next year or year and a half.  At one point, the investment was worth approximately ten percent of its original investment.  See Complaint ¶ 11, at 3.  Their investment recovered slightly, but never significantly recovered.  See Complaint ¶ 11, at 3.  After their account began plummeting, the Defendants continually attempted to reassure the Dieners, stating that there was no reason to panic, that the account would rebound, and that removing the funds would be a costly mistake.  See Complaint ¶ 14, at

4.   The Dieners were Trapeze Management's only clients who were residents of New Mexico. See R. Abramson Aff. ¶ 9, at 3.

## PROCEDURAL BACKGROUND

On May 21, 2015, the Dieners filed suit in the Sixth Judicial District Court, County of Grant, New Mexico.   See Complaint at 1.   About a month later, on July 1, 2015, Trapeze Management removed the case to federal court, asserting diversity jurisdiction.   See Notice of Removal, filed July 1, 2015 (Doc. 1).   The Dieners assert six causes of action against the Defendants: (i) negligence against all the Defendants, see Complaint ¶¶ 20-22, at 4-5 (Count 1); (ii) breach of fiduciary duty against all the Defendants, see Complaint ¶¶ 23-26, at 5 (Count 2); (iii) negligent misrepresentation against all the Defendants, see Complaint ¶¶ 27-30, at 6 (Count 3); (iv) fraud against all the Defendants, see Complaint ¶¶ 31-33, at 6 (Count 4); (v) violation of the New Mexico Unfair Trade Practices Act, N.M.S.A. 1978 § 57-12-2 against all the Defendants, see Complaint ¶¶ 34-36, at 6-7 (Count 5); and (vi) breach of contract against Trapeze Management, see Complaint ¶¶ 37-38, at 7 (Count 6)[4].   The Dieners ask the Court for judgment against the Defendants on all counts, and to "[an] award [of] actual, consequential and special damages . . . treble damages pursuant to N.M.S.A. 1978 § 57-12-10 of the Unfair Trade Practice Act . . . punitive damages . . . [and] attorney's fees if statute permits, costs of court and any other relief the Court deems just."  Complaint ¶ 39, at 7.

---

[4]Although the breach-of-contract count is identified as Count 7 in the Complaint, the Court believes that it should be listed as Count 6.  The Defendants' Notice of Removal confirms that the plaintiffs alleged only six counts against the Defendants, and the Court cannot find anything to the contrary in the parties' briefing.  Where it refers to the breach-of-contract count, the Court will therefore identify it as Count 6 and not Count 7.

1.      **The MTD.**

The Defendants filed the MTD on July 8, 2015.  The Defendants move the Court, pursuant to rule 12(b)(2), to dismiss this action for lack of personal jurisdiction.  See MTD at 1. The Defendants contend that the Court should dismiss the Dieners' Complaint against them, because they have failed to show that they have sufficient minimum contacts with New Mexico to support personal jurisdiction under New Mexico's long-arm statute or the federal Due Process Clause.  See MTD 9-13.  The Defendants assert that the Court does not have personal jurisdiction over Trapeze Management because: (i) Trapeze Management is a Canadian company, organized and existing entirely under the laws of Canada; (ii) it has not done notice filing to do business in New Mexico, and it is not authorized to do business in New Mexico; (iii) it does not have a registered agent, any offices or facilities, a telephone number, or property in New Mexico; (iv) the Dieners were the only clients it has ever had in New Mexico, and it does not advertise or solicit business in New Mexico; (v) it did not pay money to have its information reported in Money Manager Review, where the Dieners found Trapeze Management; (vi) it did not commit a tortious act in New Mexico or contract to insure property in New Mexico; (vii) after the Dieners became Trapeze Management's clients, Trapeze Capital Corp., an entity also organized and existing under the laws of Canada with no contacts to New Mexico, held their investment; and (viii) Trapeze Capital executed trades for the Dieners' account, but Trapeze Capital's carrying brokers, both of which are Canadian companies, held custody of the account. See MTD at 10-11.  In sum, Trapeze Management contends that its sole connection to New Mexico was "when Plaintiffs accessed Trapeze's informational website in order to get further information from them."  MTD at 12.  According to the Defendants, the Court of Appeals of New Mexico has considered this situation and has concluded "that a defendant's maintenance of

a passive, informational website does not support the exercise of personal jurisdiction."  MTD at

12 (citing <u>Sublett v. Wallin</u>, 2004-NMCA-089, ¶ 33, 94 P.3d 845, 853).  Further, the Defendants

maintain that in <u>Sublett v. Wallin</u>, the Court of Appeals of New Mexico, in denying personal

jurisdiction based on a passive website, "pointed out that all subsequent transactions, call, and

agreements did not involve the website."  MTD at 12.

The Defendants also argue that, like Trapeze Management, the individual Defendants –

Vinokur, R. Abramson, and H. Abramson -- lack the necessary contacts with New Mexico to be

subject to personal jurisdiction.  <u>See</u> MTD at 12.  The Defendants explain:

> Randall Abramson is a resident of Ontario, Canada, and has only been to
> New Mexico once, on vacation over twenty years ago.  He has never transacted
> business here, been listed in a phone directory, have offices, facilities, or
> employees here, nor been a part of any previous lawsuit.
>
> Herb Abramson is a resident of Ontario, Canada, and has never been a
> resident of or owned property in New Mexico.  He has never been listed in a
> telephone directory, operated a motor vehicle, filed a lawsuit, maintained a bank
> account, or transacted business in New Mexico.  He has never been to the State.
> Likewise, Mikhail Vinokur is a resident of Ontario, Canada, has never been a
> resident or owned property in New Mexico.  He has not been listed in a telephone
> directory, operated a motor vehicle, filed a lawsuit, maintained a bank account, or
> transacted business in the State.  He also has never visited New Mexico.
> Consequently, no personal jurisdiction exists for any of the individual Defendants.

MTD at 12-13 (internal citations omitted).  The Defendants therefore ask the Court to enter an

Order under rule 12(b)(2) dismissing all claims against them based on lack of personal

jurisdiction.  The Defendants also filed Vinokur's, R. Abramson's, and H. Abramson's affidavits

in support of their MTD.  <u>See</u> Vinokur Aff. at 1; R. Abramson Aff. at 1; H. Abramson Aff. at 1.

    **2.**    **<u>The Response</u>.**

The Dieners responded on July 22, 2015.  <u>See</u> Response to Defendants Motion to Dismiss

for Lack of Personal Jurisdiction, filed July 22, 2015 (Doc. 11)("Response").  The Dieners first

assert that New Mexico's long-arm statute, N.M.S.A. § 38-1-16, is satisfied.  See Response at 2.

According to the Dieners, New Mexico's long-arm statute states, in relevant part:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
>> 1. the transaction of any business within this state; . . . .
>>
>> 3. the commission of a tortious act within this state;

Response at 2-3 (quoting N.M.S.A. § 38-1-16).  The Dieners contend that, for purposes of New Mexico's long-arm statute, the Defendants committed a tort within New Mexico, because they tortuously acted or failed to act, causing economic injury to the Dieners in New Mexico. Response at 3.  The Dieners cite to Santa Fe Technologies v. Argus Networks, 2002-NMCA-030, 42 P.3d 1221, for the proposition that, where a non-resident corporation commits a business tort, the court applies the "last-place-of-the-wrong" rule, which looks to the location of the last act necessary to complete the injury.  Response at 3.  According to the Dieners, in Santa Fe Technologies v. Argus Networks, the Court of Appeals of New Mexico held that "the last act in a business tort case *is where the plaintiff suffers economic loss*" and, in this case, the Dieners suffered economic loss in New Mexico.  Response at 3-4 (emphasis in original).

The Dieners next argue that, for purposes of New Mexico's long-arm statute, the Defendants have "transacted business in the state of New Mexico."  Response at 4.  The Dieners argue:

> Defendants made telephone calls to Plaintiffs in New Mexico, sent numerous mailings to Plaintiffs in New Mexico and received money transfers and/or checks from New Mexico banks.  Defendants participated in Internet outreach which was aimed at all persons in the United States, including residents of New Mexico.  Defendants and their affiliate company have registered with the U.S. Securities and Exchange Commission based on their activities within the

United States and with respect to their clients here.  Defendants have registered to
do business in various other states of the United States.

Response at 4.  The Dieners also cite to the New Mexico Securities Act, N.M.S.A. § 58-13C-

406, which according to the Dieners, requires broker-dealers, investment advisers, and agents

dealing in securities to file an application to register, and a consent to service of process.  See

Response at 4.  The Dieners acknowledge, however, that N.M.S.A. § 58-13C-406 contains an

exemption from registration for investment advisors "with less than five clients in New Mexico."

Response at 5.  The Dieners do not purport to argue that the Defendants were required to register

under N.M.S.A. § 58-13C-406, but rather, assert that "[h]aving one or two clients compared to

having five clients is a matter of quantity of business not whether or not business was being

transacted."  Response at 5.  Moreover, the Dieners maintain that "the second prong of the long-

arm statute giving New Mexico personal jurisdiction over non-residents 'transacting business' in

New Mexico is satisfied in the present case."  Response at 6.  The Dieners explain that a plaintiff

must satisfy only one prong under N.M.S.A. § 58-13C-406 and that, here, New Mexico has long-

arm jurisdiction over the Defendants "either for the Defendants' commission of a tort in New

Mexico or their transacting of business here."  Response at 6.

The Dieners next move on to the "final part of the test of personal jurisdiction . . . [:]

whether the Defendants have the 'minimum contacts' with New Mexico necessary to satisfy 'due

process' and [whether] maintenance of a suit in New Mexico does not offend traditional notions

of fair play and justice."  Response at 6.  According to the Dieners, for tort cases, the due process

analysis is somewhat different, and "requires the 'purposeful *direction*' test rather than the

purposeful *availment* test."  Response at 7 (emphasis in original)(citing Newsome v. Gallacher,

722 F.3d 1257 (10th Cir. 2013)).  The Dieners contend that, in tort suits, purposeful direction has

three elements: (i) an intentional action that was (ii) expressly aimed at the forum state, with (iii)

knowledge that the brunt of the injury would be felt in the forum state.  See Response at 7.  They

cite a number of cases, arguing that a single contact with the forum state may suffice to confer

jurisdiction, and that fraudulent communications sent into the forum constitute purposeful

availment or purposeful direction.  See Response at 9-14.

Finally, the Dieners apply the three-pronged test for purposeful direction, contending that

"clearly there was such direction in the present case."  Response at 14.  The Dieners first assert:

> Plaintiffs have alleged that Defendants induced them to invest $500,000
> by falsely representing that their investment strategy was safe and without
> significant risk and that Defendants purposely failed to meaningfully disclose
> aspects of their strategy which involved significant risk and a conflict of interest.
> They also represented that the significant losses Plaintiffs experienced initially
> were short-term and would bounce back and that to remain invested was the
> wisest choice.  Also, alleged is that Defendants invested Plaintiffs' money,
> without directly informing Plaintiffs, in a portfolio that involved significant risk
> and conflicts of interest, and, in doing so, breached duties they had to Plaintiffs.
> Defendants did these actions both through telephone conversations and the
> mailing of marketing and other informational materials.

Response at 14-15.  Second, the Dieners argue that these acts were expressly aimed at the forum

state.  See Response at 15.  According to the Dieners, being aimed at the forum means that the

Defendants aimed their acts "at a plaintiff who the defendant knows is a resident of the state and

will suffer damages in that state."  Response at 15.  Here, the Dieners contend that the

Defendants

> knew or reasonably should have known the Plaintiffs were residents of the state of
> New Mexico.  They knew the Plaintiffs' mailing address was in the state of New
> Mexico, as that is the address on their 'signing agreement' attached to the
> complaint.  They knew from the information provided to Defendants regarding
> net worth, that the Plaintiffs owned their own home and that there was only one of
> those which was in New Mexico.  They knew or should have known the phone
> number they were calling to talk to the Plaintiffs was a New Mexico phone
> number.  They knew Plaintiff Jonathan Diener was a lawyer with an office in
> Silver City, New Mexico.  While the Defendants had never visited the Plaintiffs
> in their home in New Mexico, they had every reason to know they were New
> Mexico residents and none to believe otherwise.

- 11 -

Response at 15-16 (internal citations omitted).  On the final prong of the "purposeful direction test," the Dieners assert that the Defendants knew "that the brunt of Plaintiffs' injury would be felt in New Mexico" and that, "if they were to lose the money, the effects of the loss would be felt by the Plaintiffs in New Mexico."  Response at 16.  In sum, the Dieners maintain that they are entitled to a finding that the Defendants had the minimum contacts necessary to satisfy due process, because they have met the purposeful direction test's requirements.  See Response at 16.

### 3.    **The Reply**.

The Defendants filed their Reply on August 7, 2015.  See Defendants' Reply to Plaintiffs' Response to Motion to Dismiss for Lack of Personal Jurisdiction, filed August 7, 2015 (Doc. 14)("Reply").  The Defendants advance two arguments: (i) that the elements of New Mexico's long-arm statute are not met, see Reply at 1-4; and (ii) that the Defendants do not have minimum contacts under the Due Process Clause, see Reply at 4-7.  Regarding New Mexico's long-arm statute, the Defendants dispute that the Dieners' alleged financial losses in New Mexico count as a tort under the long-arm statute.  See Reply at 2.  They attempt to distinguish Santa Fe Technologies, Inc. v. Argues Networks, Inc., 2002 NMCA-030, 42 P.2d 1221, contending that, in that case, the Court of Appeals of New Mexico did not find personal jurisdiction based solely on an effect on a New Mexico bank account, but rather, based on a variety of contacts that do not exist in this case.  See Reply at 2-3.  There, the out-of-state company initiated contact with the New Mexico company; (ii) the two companies acted as if they were one company intermingling funds; and (iii) the out-of-state company sent an agent to New Mexico to negotiate a contract.  See Reply at 3.  Moreover, the Defendants maintain that the mere allegation that the Dieners suffered the consequences of injury in New Mexico is not sufficient to establish personal jurisdiction over the Defendants.  See Reply at 4.  The Defendants

also argue, under the long-arm statute's second prong, that the Defendants did not transact business in New Mexico.  See Reply at 4.  According to the Defendants, they did not specifically seek out the Dieners to give financial advice, they conducted their financial business from within Canada, and the Dieners initiated all contact with them.  See Reply at 4.

The Defendants next assert that they do not have sufficient minimum contacts to comport with the federal Due Process Clause's requirements.  See Reply at 4-7.  The Defendants argue that, when the Dieners contacted them in Canada, they merely complied with the Dieners' desires to contract with their Canadian company for investment.  See Reply at 5-6.  According to the Defendants, "[t]he unilateral acts of the plaintiff or other parties cannot be considered as a basis for exercising personal jurisdiction consistent with due process," and "[t]he fact that Plaintiffs reside in New Mexico or have assets in New Mexico, and that Plaintiffs contacted Defendants from New Mexico all constitute the unilateral acts and contacts of Plaintiffs, not Defendants, with the forum state."  Reply at 6.  The Defendants further explain:

> The investment was entirely transacted and handled in Canada.  The fact that Plaintiffs live in New Mexico and maintain other accounts here, forcing the Defendants to send communications to them in New Mexico and receive communications sent from New Mexico does not constitute purposeful availment by the Defendants of the privilege of conducting activities in New Mexico.
>
> Defendants did not specifically direct activities toward New Mexico as required to be subject to jurisdiction in New Mexico.  To the extent Plaintiffs rely on out-of-jurisdiction cases stating that communications into the state could constitute minimum contacts, New Mexico law governs the analysis of personal jurisdiction.  New Mexico cases have held that returning a phone call by a New Mexico resident does not invoke the benefits and protections of New Mexico laws and subject the caller to personal jurisdiction of the State.  As Defendants lack the minimum contacts required by due process, New Mexico and the United States District Court for the District of New Mexico lack personal jurisdiction.
>
> It is important to note that Plaintiffs do not identify even a single act by any individually named Defendant, Mikhail Vinokur, Randall Abramson, or Herb Abramson, that would constitute a contact with New Mexico.  Plaintiffs make no showing of any, much less the requisite minimum, contacts that would subject any

of the individuals to jurisdiction in New Mexico.  Therefore, no claims can be maintained against them in New Mexico consistent with due process, and consequently, the claims against the individuals must be dismissed.

Reply at 6-7 (internal citations omitted).  In sum, the Defendants ask the Court to dismiss the claims against them, because they all lack sufficient minimum contacts with New Mexico to permit the exercise of personal jurisdiction over them, consistent with the requirements of New Mexico's long-arm statute and due process.  See Reply at 7.

### STANDARD FOR DETERMINING RULE 12(b)(2) MOTIONS

Motions to dismiss under rule 12(b)(2) test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction.  See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999).  Rule 12(b)(2) concerns lack of personal jurisdiction.  See Fed. R. Civ. P. 12(b)(2).  In determining personal jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated.  See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction").  Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements.  See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J).  At this stage of the proceedings, it is not for the court to resolve disputed facts.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002).  Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional

showing.'"   Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 45

(quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

**LAW REGARDING PERSONAL JURISDICTION**

The plaintiff has the burden of proving personal jurisdiction.  The court's jurisdiction

may rest on general or specific personal jurisdiction.  Due process, however, limits any state

statutory basis for personal jurisdiction.

**1.      Burden of Proof.**

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving

jurisdiction exists."   Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

> When jurisdiction is "decided on the basis of affidavits and other written
> materials, the plaintiff need only make a prima facie showing" of facts that would
> support the assertion of jurisdiction.  [Wenz v. Memery Crystal, 55 F.3d at 1505].
> "The allegations in the complaint must be taken as true to the extent they are
> uncontroverted by the defendant's affidavit."   Behagen v. Amateur Basketball
> Ass'n, 744 F.2d at 733.  When, however, a defendant presents credible evidence
> through affidavits or other materials suggesting the lack of personal jurisdiction,
> the plaintiff must come forward with sufficient evidence to create a genuine
> dispute of material fact on the issue.  See Doe v. Nat'l Med. Servs., 974 F.2d 143,
> 145 (10th Cir. 1992).  Only if the plaintiff meets the obligation of contesting the
> credible evidence that the defendant presents does the court resolve the factual
> disputes in favor of the plaintiff.  See Wenz v. Memery Crystal, 55 F.3d at 1505;
> Behagen v. Amateur Basketball Ass'n, 744 F.2d at 733.

Clark v. Meijer, Inc., 376 F.Supp.2d 1077, 1082 (D.N.M. 2004)(Browning, J.).  When, however,

"personal jurisdiction is assessed in an evidentiary hearing . . . , the plaintiff generally must

establish, by a preponderance of the evidence, that personal jurisdiction exists."   Dudnikov v.

Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 n.4 (10th Cir. 2008).  "The party

seeking to establish personal jurisdiction over a foreign litigant must make two showings: first,

that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it

comports with the due process requirements of the Fourteenth Amendment."   Marcus Food Co.

- 15 -

v. DiPanfilo, No. CIV 10-3285, 2011 WL 5084997, at *3 (10th Cir. Oct. 27, 2011).   New

Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as

constitutionally permissible."   Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-

NMSC-018, ¶ 6, 48 P.3d 50, 54 (2002).  Consequently, the Court "need not conduct a statutory

analysis apart from the due process analysis."   Marcus Food Co. v. DiPanfilo, 2011 WL

5084997, at *3 (internal quotation marks omitted).

### 2.    General and Specific Jurisdiction.

Depending on the character and extent of a defendant's contacts, a court may exercise

general or specific personal jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall,

466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and
> systematic" contacts with the forum state, and does not require that the claim be
> related to those contacts.  Specific jurisdiction, on the other hand, is premised on
> something of a quid pro quo: in exchange for "benefitting" from some purposive
> conduct directed at the forum state, a party is deemed to consent to the exercise of
> jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078 (emphasis in original).  Thus,

"[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either

generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular

forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

A court may assert specific jurisdiction "if the defendant has 'purposefully directed' his

activities at residents of the forum, and the litigation results from alleged injuries that 'arise out

of or relate to' those activities."   Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472

(1985)(citations omitted)(internal quotation marks omitted).  In the tort context, a defendant has

"purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken

intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was

taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Cases involving the internet modify these general personal jurisdiction principles.   In these cases, the Tenth Circuit focuses whether the website or internet user "intentionally direct[ed] his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there."   Shrader v. Biddinger, 633 F.3d 1235, 1240 (10th Cir. 2011)(emphasis in original).   Simply posting defamatory statements on a website will not, standing alone, establish personal jurisdiction over the poster in any state where the post may be read.   See Shrader v. Biddinger, 633 F.3d at 1241.   Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."   Shrader v. Biddinger, 633 F.3d at 1241.   In short, "the forum state itself must be the focal point of the tort."   Shrader v. Biddinger, 633 F.3d at 1244 (emphasis in original)(quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1074 n.9)(internal quotation marks omitted).

### 3.    **Due Process and Personal Jurisdiction.**

The due process analysis is also two-fold:  First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he "purposefully availed" himself of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court there."   Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-76 . . . (1985); see also Emp'rs Mut. Cas. Co., 618 F.3d at 1159-60 (reiterating the Burger King standard).   Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'"   TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007)(quoting Burger King, 471 U.S. at 473, 478 . . . .

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4.

> A defendant may reasonably anticipate being subject to suit in the forum state "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 . . . (1985)(internal citation omitted); see also Hanson v. Denckla, 357 U.S. 235, 253 . . . (1958)("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d at 1287-88.  The Supreme Court of the United States has held that the mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)(holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").  In Roberts v. Piper Aircraft Corp., 1983-NMCA-110, 670 P.2d 974, the Court of Appeals of New Mexico similarly rejected the argument that foreseeability could establish minimum contacts, and found no personal jurisdiction or minimum contacts in the following circumstances:

> [T]he record is devoid of any contact between Scenic Aviation and New Mexico.  Scenic Aviation is a fixed-base operator selling aviation fuel in Las Vegas, Nevada.  There is no evidence that Scenic Aviation advertises in New Mexico, or sells fuel to New Mexico residents.  Without "contacts, ties, or relations" with New Mexico the fact that fuel sold by Scenic Aviation found its way into our state does not support a valid exercise of personal jurisdiction.

1983-NMCA-110, ¶ 19, 670 P. 2d at 978.  "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297.  As the Tenth Circuit has further explained, because "mere

- 18 -

foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state."  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

Similarly, to find general jurisdiction over a defendant, contacts must be "continuous and systematic"; therefore, "[s]imply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there"; "correspondence with a forum resident does not support general jurisdiction;" and "sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction," because a "[defendant's] lack of a regular place of business in [the forum state] is significant, and is not overcome by a few visits."  Shrader v. Biddinger, 633 F.3d at 1247. "[G]eneral jurisdiction over a web site that has no intrinsic connection with a forum state requires commercial activity carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence within the state."  Shrader v. Biddinger, 633 F.3d at 1246. When analyzing minimum contacts sufficient for general jurisdiction in regard to the operation of a web site, the Tenth Circuit has referred to, without adopting, a "sliding scale" framework. Shrader v. Biddinger, 633 F.3d at 1242 n.5.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

633 F.3d 1242 n.5 (internal quotation marks omitted).

> If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'" See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 . . . (1980)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 . . . (1945)).  [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008).  We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:
>
> > (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.
>
> Id. (brackets omitted); see also OMI Holdings, Inc., 149 F.3d at 1095 (applying these factors in a case involving a Canadian corporation).  "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." TH Agric. & Nutrition, LLC, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4-5.

In Silver v. Brown, the Court considered whether it had personal jurisdiction over defendants who allegedly slandered, defamed, and caused the plaintiff -- Michael Silver -- duress, by posting a blog on the internet that portrayed him in a negative light. See Silver v. Brown, 678 F. Supp. 2d 1187, 1204 (D.N.M. 2009)(Browning, J.), aff'd in part and rev'd in part, 382 F. App'x 723 (10th Cir. 2010).  The Court determined that it did not have personal jurisdiction over defendant Jack McMullen, because Silver failed to demonstrate that McMullen "was significantly associated with the blog or controlled it in any way."  678 F. Supp. 2d at 727. The Court also concluded that it did not have personal jurisdiction over the blog post's author --

Matthew Brown -- because he was not domiciled in New Mexico, had not traveled to New

Mexico, and did not transact business there.  See 678 F. Supp. 2d at 1211.  The Court said that

Brown's blog posts similarly did not establish personal jurisdiction, because

> the blog is closer to an informative website than a commercial website.  No
> services are offered, and Brown is not collecting revenue from the website.
> Brown does not interact with the people who post information on the blog.
> Brown, to the Court's knowledge, did not solicit negative postings on the website.
> Further, even though people in New Mexico can view the website, the blog is not
> a website that is directed solely at the people of New Mexico.  The number of
> people who can access the website in New Mexico in comparison to those who
> are able to access the website throughout the world, or even in the United States,
> according to the statistics that Silver provided at the hearing, is nominal.

678 F. Supp. 2d at 1211-12.

On appeal, the Tenth Circuit affirmed the Court's holding as to McMullen, but reversed

its decision as to Brown.  See Silver v. Brown, 382 F. App'x at 727-32.  In an opinion that the

Honorable Monrow G. McKay, United States Circuit Judge for the Tenth Circuit, authored, and

Judges Broby and Ebel joined, the Tenth Circuit applied the three-part test from Calder v. Jones

to conclude that the Court had personal jurisdiction over Brown.  See Silver v. Brown, 382 F.

App'x at 727-32.

Judge McKay first explained that the posting of the blog was "clearly an intentional act"

designed to damage the plaintiff's reputation.  382 F. App'x at 729.  Second, Judge McKay said

that Brown had "expressly aimed his blog at New Mexico[,]" where the Silver, his business, and

the majority of his customers were located.  382 F. App'x at 729.  Judge McKay said: "It was

about a New Mexico resident and a New Mexico company.  The blog complained of Mr. Silver's

and [his business'] actions in the failed business deal.  Those actions occurred mainly in New

Mexico."  382 F. App'x at 729-30.  Third, Judge McKay explained that Brown knew Silver

would suffer the brunt of his injury in New Mexico, as the state was "unquestionably the center of his business activities."  382 F. App'x at 730.

> ### 4.   New Mexico's Long-Arm Statute.

New Mexico's long-arm statute provides, in relevant part, that its courts may exercise personal jurisdiction over a party "whether or not a citizen or resident of this state . . . as to any cause of action arising from: (1) the transaction of business within this state . . . [or] (3) the commission of a tortious act within this state . . . ."  N.M.S.A. § 38-1-16.  For New Mexico courts

> to exercise personal jurisdiction over nonresident, out-of-state defendants, the following three-part test must be satisfied:
>
>> (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.
>
> State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989)(citing Salas v. Homestake Enterprises, Inc., 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987)).  The first and third step of this test have been "repeatedly equated" with the due process standard of "minimum contacts."

F.D.K. v. Hiatt, 1994-NMSC-044, ¶ 7, 872 P.2d 879, 881.  "When negligent acts occur outside New Mexico which cause injury within the state, a 'tortious act' has been committed for purposes of the long-arm statute."  Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 48 P.3d at 57.  "As with the transaction of business analysis, rather than engage in a technical analysis of whether the defendant committed a tortious act, we must equate the 'tortious act' which the defendant is alleged to have committed with minimum contacts to determine if due process has been satisfied."  Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 48 P.3d at 57 (alteration omitted)(internal quotation marks omitted).

## ANALYSIS

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in the litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing." Shrader v. Biddinger, 633 F.3d at 1239. To satisfy the requirements of the New Mexico long-arm statute, the Court must evaluate a three-prong test: (i) did the defendant commit an act or omission set forth in N.M.S.A. 1978, § 38-1-16; (ii) does the plaintiff's cause of action arise out of the alleged acts or omissions; and (iii) does the defendant have sufficient minimum contacts with New Mexico to satisfy due process concerns. See Walker v. THI of New Mexico at Hobbs Center, 801 F. Supp. 2d 1128, 1143 (D.N.M. 2011)(Browning, J.)(citing Tercero v. Roman Catholic Diocese, 2002-NMSC-018, ¶ 8, 48 P.3d at 54). Because New Mexico has extended the reach of its long-arm statute as far as is constitutionally permissible, federal due process principles govern the inquiry. See Walker v. THI of New Mexico at Hobbs Center, 801 F. Supp. 2d at 1143. As the Supreme Court of New Mexico has explained:

> Because we have interpreted the long-arm statute as extending our personal jurisdiction as far as constitutionally permissible, it is not necessary to determine whether the [defendant] transacted business within New Mexico in any technical sense. When the state courts have construed the state long-arm statute as being coextensive with the requirements of due process, "the usual two-step analysis collapses into a single search for the outer limits of what due process permits."

Fed. Deposit Ins. Corp. v. Hiatt, 1994-NMSC-044, ¶ 7, 872 P.2d 879, 881. See Shrader v. Biddinger, 633 F.3d at 1239 ("Where . . . the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry."). The Court will therefore address only whether the Defendants have minimum contacts with New Mexico such that maintenance of the Dieners' suit against them does not "offend traditional notions of fair play and substantial justice." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514

F.3d at 1070 (quoting Int'l Shoe Co. v. Washington, 326 U.S. at 316).

Depending on the character and extent of a defendant's contacts, a court may exercise specific or general personal jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. at 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts.  Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078.  Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities."  Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).  The Dieners concede that the Court does not have general personal jurisdiction over the non-resident Defendants such that they are at home in New Mexico.  The only question, therefore, is whether the Court has specific jurisdiction.  The Court concludes that the Dieners have not made a prima facie showing that Trapeze Management, Vinokur, R. Abramson, or H. Abramson have minimum contacts with New Mexico stemming from their contacts with the forum such that maintenance of the Dieners' suit against them does not offend traditional notions of fair play and substantial justice.

## I.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS.

The Dieners concede that the Court does not have general jurisdiction over the Defendants.  The Court concludes that it does not have specific jurisdiction.

A.   **THE COURT LACKS SPECIFIC JURISDICTION OVER TRAPEZE MANAGEMENT BASED ON ITS OPERATION OF A PASSIVE, INFORMATIONAL WEBSITE AND ITS LISTING ON MONEY MANAGER REVIEW.**

The Court does not have specific jurisdiction over Trapeze Management based on its operation of a passive, informational website and its listing on Money Manager Review.[5]   An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state.   See Burger King Corp. v. Rudzewicz, 471 U.S. at 472.   The Tenth Circuit has examined the problems relating to personal jurisdiction in the internet context, concluding that "it is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there."   Shrader v. Biddinger, 633 F.3d at 1240 (emphasis in original).

Actually, as *ALS Scan [Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002] acknowledges, the emphasis on intentionally directing internet content or operations at the forum state has its grounding in the "express aiming" requirement the Supreme Court developed in *Calder* to deal with the somewhat analogous question of specific jurisdiction based on content in nationally distributed print media.   Thus, while the court has yet to flesh out a comprehensive position in a published opinion dealing with omnipresent internet activity like web sites and posts, the *ALS Scan* approach, which is fairly representative of most circuits that have addressed the matter, is compatible with our discussion of personal jurisdiction in *Dudnikov*.

This approach and its counterparts in other circuits have some immediate implications that are relevant here.  The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents in the forum state. *See, e.g. Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003); *Revell v. Lidov*, 317 F.3d 467, 471-76 (5th Cir. 2002); *cf. Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297, 1298 (10th Cir. 1999)(holding operation of web site insufficient for general jurisdiction; web site not considered in analysis

---

[5]The Dieners conceded that Trapeze Management did not pay to be listed on Money Manager Review at the November 30, 2015, hearing on the MTD.

of specific jurisdiction because claims were not related to it).  Similarly posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside).  *See, e.g., Johnson v. Arden*, 614 F.3d at 797; *Revell*, 317 F.3d at 475-76; *Young v. New Haven Advocate*, 315 F.3d 256, 258-59 (4th Cir. 2002).  Consistent with the thrust of the *Calder*-derived analysis for specific jurisdiction in the internet context discussed above, in considering what "more" could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.

Shrader v. Biddinger, 633 F.3d at 1241.  The Tenth Circuit's approach to personal jurisdiction in the internet realm is consistent with its prior holding that "evidence of mere placement of advertisements in nationally distributed papers or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser."  Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op., 17 F.3d 1302, 1305 (10th Cir. 1994).

Here, Trapeze Management might be subject to suit in New Mexico based on its website or Money Manager Review listing if it had intentionally directed its activities at New Mexico.  See Shrader v. Biddinger, 633 F.3d at 1241.  Three factors, however, cut against a finding of specific personal jurisdiction based on Trapeze Management's operation of a passive, informational website or its listing on Money Manager Review.  First, the Trapeze Management website is passive.  See R. Abramson Aff. ¶ 15, at 4.  It provides information, but does not offer visitors the opportunity to invest or interact with the site.  See R. Abramson Aff. ¶ 15, at 4.  Second, based on the record before the Court, Money Manager Review also appears to be passive, merely allowing visitors to search its database of investment performance.  See Complaint ¶¶ 6-7, at 2.  Third, Trapeze Management did not pay Money Manager Review to have its listing placed in its database, but only supplied information.  There is no indication that

either Trapeze Management's website or its Money Manager Review listing targeted a New Mexico audience, much less the Dieners personally.  See Shrader v. Biddinger, 633 F.3d at 1241. Nor are there any other facts suggesting that Trapeze Management's website or listing had some other connection to New Mexico.  The Court does not think that, through the two websites, Trapeze Management "intentionally direct[ed] his/her/its activity or operation at [New Mexico] rather than just having the activity or operation accessible there."  Shrader v. Biddinger, 633 F.3d at 1240 (emphasis in original).  The Court thus concludes that it does not have specific personal jurisdiction over Trapeze Management based on Trapeze Management's operation of a passive website or its Money Manager Review listing.

**B.     THE COURT LACKS SPECIFIC JURISDICTION OVER TRAPEZE MANAGEMENT BASED ON THE DEFENDANTS' TELEPHONE CONVERSATIONS WITH THE DIENERS, THE MAILED INFORMATIONAL MATERIALS, AND THE DELIVERY OF THE INVESTMENT CONTRACT.**

Having concluded that neither Trapeze Management's operation of a passive, informational website nor its listing on Money Manager Review provide a basis for the Court to exercise specific jurisdiction, it now turns to the other evidence that Trapeze Management purposefully directed its activities at New Mexico.   In determining whether Trapeze Management has established minimum contacts with New Mexico, the Court examines whether it "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Benton v. Cameco Corp., 375 F.3d 1070, 1076 (10th Cir. 2004)(quoting Hanson v. Denckla, 357 U.S. at 253).  A defendant's contacts are sufficient if "the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state.'"

Benton v. Cameco Corp., 375 F.3d at 1076 (quoting OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d at 1091).

The Dieners assert that Trapeze Management purposefully directed its activities at New Mexico, because:

(i) After the Dieners initiated contact with Trapeze Management, Trapeze Management had several telephone conversations with them.

(ii) After the Dieners initiated contact with Trapeze Management, Trapeze Management mailed marketing or other informational materials and brochures to them in New Mexico.

(ii) The Dieners and Trapeze Management ultimately entered into an investment agreement.

Complaint ¶¶ 5, 7-9, at 2-3; J. Diener Aff. ¶¶ 1-6, at 1-2; Investment Counsel Agreement, filed July 1, 2015 (Doc. 1-2). The Complaint makes the following specific allegations regarding these alleged contacts:

> [Vinokur] was the person who Plaintiffs communicated with initially and mostly throughout Plaintiffs' relationship with Trapeze, although Plaintiffs conversed with Defendant Randall Abramson and Possibly Herb on several occasions both before and after the losses were incurred.
>
> . . . .
>
> In early 2007, Plaintiff Jonathan Diener inherited a substantial amount of money and sought a means to invest it. The plaintiffs had next to no investment experience. They purchased a service from a web company on the Internet which tracked performance and risk factors involved in several hundred mutual and other funds which specialized in investing customers funds. On information and belief, Trapeze had paid to have their information reported by this Web company as a means of advertising their company.
>
> Plaintiffs contacted Trapeze and, after receiving marketing materials from them and after several conversations by telephone, decided to invest money with them. The statements made in the marketing materials distributed by the Defendants to the Plaintiffs understated the risks associated with Trapeze's investing strategy and a number of recommended investments.

> In several conversations Plaintiffs had with Defendant Vinokur prior to investing with Trapeze, Vinokur represented that Trapeze was a safe investment, was well-diversified and had an investment program that emphasized steady long-term growth as opposed to immediate or short-term gains. These statements were false and/or misleading.

Complaint ¶¶ 5, 7-9, at 2-3. In the Complaint, the Dieners identify a number of allegedly false or misleading statements that Vinokur made in these telephone conversations. See Complaint ¶ 9, at 3. The Dieners also attach the J. Diener Aff. to their Response, which states, in pertinent parts:

> The conversations averred to in this pleading which were preliminary to entering into a contract with Defendant Trapeze Asset Management, Inc. ("Trapeze") were between myself and Defendant Mike Vinokur ("Vinokur") and often Plaintiff Robbie Diner ("Ronnie") also participated via speaker phone. I believe Defendant Randall Abramson ("Randall") may have been on one call. Plaintiffs contend that Vinokur was at all times acting as the agent and/or employee of the other three Defendants and that Randall was acting on behalf of himself, Trapeze and Defendant Herb Abramson. . . .

> After one or two telephonic conversations with the Defendants, they needed to have information of the net worth of myself and Ronnie to determine if we qualified for their program. . . . The Defendants also took my mailing address to mail me information, which was an address in Mule Creek, New Mexico.

> We also had discussions about my career as an attorney which I was hoping to retire from and that I had an office in Silver City, New Mexico.

> The Defendants also knew that my banks were in Silver City, New Mexico.

> The Defendants orally represented that Trapeze Asset Management, Inc. was a secure investment. They said their portfolio was diversified and failed to disclose that it was heavily weighted toward small cap stocks and toward the oil-mineral sector. They said that they were tailored to steady long-term gain rather than large short-term gains. They supported this with a statement that their quite high returns for the last few years should not be expected to continue and that a much more conservative percentage return was what they sought and could be expected to earn.

> They did not mention that they did leveraging or short-selling or what that might mean for a portfolio in the event of an economic downturn. They did not

mentioned [sic] that a not insignificant portion of the portfolio would be invested in a company or companies owned by the Abramson defendants.

J. Diener Aff. ¶¶ 1-6, at 1-2.

Trapeze Management maintains that none of these contentions, standing alone or together, demonstrate that they are subject to specific personal jurisdiction in New Mexico. The Court concludes that, under the facts of this case, there are not enough contacts between Trapeze Management and the Dieners to establish minimum contacts. "A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." Benton v. Cameco Corp., 375 F.3d at 1077. The Supreme Court has explained that "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. at 473. Here, the Dieners and not Trapeze Management, reached out beyond New Mexico to create a contractual relationship with Trapeze Management.

Further, the subsequent telephone conversations and mailings do not change that analysis, for "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Benton v. Cameco Corp., 375 F.3d at 1077. The Tenth Circuit has explained:

Certainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards. *See Burger King*, 471 U.S. at 475 n.18 . . . ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). However, the exercise of jurisdiction depends on the *nature* of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards.

. . . .

> The proper focus for analyzing these contacts is whether they represent an effort by the defendant to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 375 U.S. [at] 253 . . .

Rambo v. Am. S. Ins. Co., 839 F.2d at 1418 (citations and footnote omitted).  The Court does not think that the nature of the telephone conversations or ancillary mailings created a "substantial connection" with New Mexico.  Benton v. Cameco Corp., 375 F.3d at 1076.

This case is unlike Benton v. Cameco Corp., 375 F.3d at 1077, where a Colorado resident, Benton, entered into a Memorandum of Understanding ("MOU") with Cameco Corp., a Canadian company.  In that case, Benton agreed to purchase uranium from Cameco Corp. for resale.  375 F.3d at 1076-77.  After a dispute arose, Benton filed suit alleging that Colorado had specific personal jurisdiction over Cameco Corp. because:

> [1] Cameco entered into [the MOU] with a Colorado resident that set forth the key terms of a joint venture;
>
> [2] Cameco would have partially performed the transactions contemplated by the MOU in Colorado in that it would have made payments to Benton in Colorado;
>
> [3] Cameco sent employees to Colorado to conduct a due diligence review of Benton's business in connection with the MOU;
>
> [4] Cameco sent significant correspondence to Benton in Colorado; and
>
> [5] Cameco committed a tortious act by interfering with Benton's business relationship, the effects of which were suffered in Colorado.

375 F.3d at 1076 (brackets in original).  The Tenth Circuit ultimately concluded that Cameco Corp. had sufficient minimum contacts with Colorado to create specific jurisdiction.  See 375 F.3d at 1078.  The Tenth Circuit explained that, in addition to the contract's existence, the uranium transactions' business end -- the brokering of the deals, the parties' coordination, the exchange of money and information, and the joint-venture's decision-making -- would take place

partially in Colorado.  See 375 F.3d at 1077.  The Tenth Circuit also recognized that telephone calls and letters provided additional evidence of the business relationship, but that

> [e]ven more significant . . . Cameco sent several of its employees to Mr. Benton's office in Colorado to conduct the due diligence review required by the MOU. Cameco not only established a business relationship with Mr. Benton's Colorado-based company on paper, but it also sent representatives to Colorado, the forum state, in order to maintain and further that business relationship.

375 F.3d at 1077.  The Tenth Circuit concluded that these factors taken together showed that Cameco Corp. purposefully directed his activities at residents of the forum, and the litigation resulted from alleged injuries that arose or related to those activities.  See 375 F.3d at 1077-78. In sum, Cameco Corp.'s "conduct and connection with the forum State [were] such that he should reasonably anticipate being haled into court there."  375 F.3d at 1076.

Unlike in Benton v. Cameco Corp., under the investment agreement between the Dieners and Trapeze Management, the deals brokering, the parties' coordination, the money and information exchange, and the decision-making under the investment agreement -- did not take place in New Mexico.  More important, no Trapeze Management employees traveled to New Mexico to meet with the Dieners.  The Court also agrees with the Defendants that the following factors weigh against a finding of specific jurisdiction in this case: (i) Trapeze Management is a Canadian company, organized and existing entirely under the laws of Canada; (ii) it has not done notice filing to do business in New Mexico, and it is not authorized to do business in New Mexico; (iii) it does not have a registered agent, any offices or facilities, a telephone number, or property in New Mexico; (iv) the Dieners were the only clients it has ever had in New Mexico, and it does not advertise or solicit business in New Mexico; (v) it did not pay money to have its information reported in Money Manager Review, where the Dieners found the company; (vi) it did not commit a tortious act in New Mexico or contract to insure property in New Mexico; (vii)

after the Dieners became clients of Trapeze Management, Trapeze Capital, an entity also organized and existing under the laws of Canada, with no contacts to New Mexico, held their investment; (viii) and Trapeze Capital executed trades for the Dieners' account, but Trapeze Capital Corp.'s carrying brokers, both of which are Canadian companies, held their account in custody in Canada.  See MTD at 10-11.

## II.    THE COURT LACKS SPECIFIC JURISDICTION OVER VINOKUR, R. ABRAMSON, AND H. ABRAMSON.

For the same reasons that specific personal jurisdiction does not exist as to Trapeze Management, the Court holds that specific jurisdiction over R. Abramson, H. Abramson, and Vinokur is also lacking.  Even though the Court must make an independent assessment of the individual Defendants' minimum contacts with the forum, the Court concludes that the same jurisdictional facts relevant to Trapeze Management are likewise relevant to its analysis regarding Vinokur, R. Abramson, and H. Abramson.  Just as the Dieners fail to show that Trapeze Management purposefully availed itself of the privilege of doing business in New Mexico, the Court holds that the Dieners have not shown that Vinokur, R. Abramson, and H. Abramson acted with the same purpose or intention.

The Dieners have not come forward with evidence that Vinokur, R. Abramson, and H. Abramson traveled to New Mexico to meet with the Dieners.  R. Abramson contends in his affidavit that he has visited New Mexico only once, over twenty years ago, on vacation.  See R. Abramson Aff. ¶ 20, at 4.  Vinokur and H. Abramson, on the other hand, maintain that they have never visited the State of New Mexico.  See Vinokur Aff. ¶ 6, at 2.; H. Abramson Aff. ¶ 10, at 2. The Dieners have produced, however, evidence that Vinokur R. Abramson, and H. Abramson participated or may have participated in telephone conversations with the Dieners about their investment agreement with Trapeze Management.  For the reasons discussed above, these acts

were insufficient to establish specific jurisdiction over the individual Defendants in this forum. The Court concludes that its exercise of specific personal jurisdiction over the individual Defendants would be inconsistent with traditional notions of fair play and substantial justice.

**IT IS ORDERED** that the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed July 8, 2015 (Doc. 5), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jonathan Diener
Mule Creek, New Mexico

 *Plaintiff pro se and Attorney for Plaintiff Ronnie Diener*

Emily A. Franke
Stephanie Latimer
Rodney L. Schlagel
Butt Thornton & Baehr
Albuquerque, New Mexico

 *Attorneys for the Defendants*